UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

KENNETH KOAN, Sr.,

        Petitioner,               Case No. 1:14-cv-204

v.                                          Honorable Janet T. Neff

BONITA HOFFNER,

        Respondent.
_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). The Court may *sua sponte* dismiss a habeas action as time-barred under 28 U.S.C. § 2244(d). *Day v. McDonough,* 547 U.S. 198, 209 (2006). After undertaking the review required by Rule 4, I conclude that the petition is barred by the one-year statute of limitations. Moreover, even if it is not time-barred, it is without merit.

**Discussion**

I.   Background

Petitioner Kenneth Koan, Sr., is incarcerated at the Lakeland Correctional Facility. In 1999, following a jury trial in Barry County Circuit Court, Petitioner was convicted of criminal sexual conduct with a person under the age of 13, Mich. Comp. Laws § 750.520b(1)(a). On February 11, 1999, the trial court sentenced him to 60 to 120 years of imprisonment. He appealed his conviction and sentence to the Michigan Court of Appeals and then to the Michigan Supreme Court. The Michigan Court of Appeals affirmed the judgment of conviction and sentence on June 9, 2000, and the Michigan Supreme Court denied leave to appeal on November 29, 2000. Petitioner subsequently filed an application for habeas corpus relief in this Court in 2001, which was dismissed without prejudice on November 6, 2003, for lack of exhaustion of state court remedies. *See Koan v. Michigan*, No. 1:01-cv-463 (W.D. Mich.).

Sometime thereafter, Petitioner filed a motion for relief from judgment in state court pursuant to subchapter 6.500 of the Michigan Court Rules, claiming (1) actual innocence based on newly discovered evidence, and (2) ineffective assistance of counsel. (Am. Pet., docket #6, Page ID#42.) The motion was denied on August 1, 2012, because "Defendant has exhausted all of his appeal rights." (Order Denying Motion for Relief from J. and Evidentiary Hr'g, docket #6-1, Page ID#55.) Petitioner sought leave to appeal the circuit court's decision to the Michigan Court of Appeals, which denied leave on February 28, 2013, because "appeal from the denial or rejection of a successive motion for relief from judgment is prohibited by MCR 6.502(G)(1)." *People v. Koan*, No. 313182 (Mich. Ct. App.). Petitioner then appealed to the Michigan Supreme Court, which

denied leave to appeal on July 30, 2013, because "the defendant's motion for relief from judgment is prohibited by MCR 6.502(G)." *People v. Koan*, No. 146982 (Mich.).

Petitioner filed the instant action on or about February 26, 2014.[1] In his amended petition, he asserts the following grounds for relief, which are ostensibly the same as those that were raised in his motion for relief from judgment: (1) actual innocence / denial of a fair trial; and (2) ineffective assistance of counsel. In support of both claims, Petitioner asserts that the "chief witness" against him, the victim of Petitioner's offense, recanted his testimony. (Am. Pet., docket #6, Page ID#45.) When the victim turned 18 years old, he allegedly sent Petitioner's counsel two "unsolicited affidavits" stating that his testimony at trial was coerced and that Petitioner is innocent. (*Id.* at Page ID#46; Memo. in Support of Pet., docket #2, Page ID#12.) The affidavits are attached to Petitioner's brief in support of the petition. (App'x A to Mem. of Law in Support of Pet., docket #2-1, Page ID##20, 21.)

## II. Statute of Limitations

Petitioner's application is subject to the one-year statute of limitations provided in 28 U.S.C. § 2244(d)(1), which became effective on April 24, 1996, as part of the Antiterrorism and Effective Death Penalty Act, PUB. L. NO. 104-132, 110 STAT. 1214 (AEDPA). Section 2244(d)(1) provides:

---

[1] Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner dated his application on February 26, 2014, and it was received by the Court on March 3, 2014. Thus, it must have been handed to prison officials for mailing at some time between February 26 and March 3. For purposes of this opinion, the Court has given Petitioner the benefit of the earliest possible filing date. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that the date the prisoner signs the document is deemed under Sixth Circuit law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006)).

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

In most cases, § 2244(d)(1)(A) provides the operative date from which the one-year limitations period is measured.  Under that provision, the one-year limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  Petitioner appealed his conviction to the Michigan Court of Appeals and the Michigan Supreme Court.  The Michigan Supreme Court denied his application on November 29, 2000.  Petitioner did not petition for certiorari to the United States Supreme Court.  The one-year limitations period, however, did not begin to run until the ninety-day period in which Petitioner could have sought review in the United States Supreme Court had expired. *See Lawrence v. Florida*, 549 U.S. 327, 332-33 (2007); *Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000).  The ninety-day period expired on February 27, 2001.  Obviously, he filed the instant action more than one year after that date.

Alternatively, an application under § 2254 may be filed within one year from the "date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Petitioner apparently became aware that the victim wanted to recant his testimony while Petitioner's case was still on appeal. When Petitioner appealed his conviction to the Michigan Supreme Court, he raised the following issue:

> It was brought to my attention after the trial that the victim . . . testif[ied] falsely, he was threatened by the therapists w[h]ere he was being held at the time. They forced him to lie by threat[en]ing to not ever let him go home. He[] will correct this.

(*Koan v. Michigan*, No. 1:01-cv-463 (W.D. Mich.), docket #27, Pro Per Application for Leave to Appeal.) Approximately one year later, in July 2001, when Petitioner filed his previous habeas petition, he asserted that the victim "was made to lie about the offense . . . [he] wrote a statement[;] you can get it from him . . . ." (*Koan*, No. 1:01-cv-463, docket #1, Pet. 3.) Thus, it appears that Petitioner was aware of the facts on which his claims are based under § 2244(d)(1)(D) before his judgment of conviction became final under § 2244(d)(1)(A). According to § 2244(d)(1), the later date prevails. Thus, the date that Petitioner's conviction became final, February 27, 2001, is the relevant start date for calculating the one-year statute of limitations period. Consequently, absent tolling, the statute of limitations expired on February 27, 2002.

The running of the statute of limitations is tolled by statute when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); *see also Duncan v. Walker*, 533 U.S. 167, 181-82 (2001) (limiting the tolling provision to only State, and not Federal, processes). An application for post-conviction relief "is pending as long as the ordinary state collateral review process is 'in

continuance' - *i.e.*, 'until the completion of' that process. In other words, until the application has achieved final resolution through the State's post-conviction procedures . . . ." *Carey v. Saffold*, 536 U.S. 214, 219 (2002). Petitioner indicates that he filed a motion for relief from judgment in state court, but he does not indicate when he filed that motion; thus, it is not clear whether and for how long the motion would have tolled the statute of limitations. Given that the motion was denied in August 2012, however, the statute of limitations likely expired long before he filed his motion. In other words, it is highly unlikely that Petitioner filed his motion for relief from judgment before February 27, 2002, and that the state court then allowed it to remain pending for ten years before denying it. It is far more likely that Petitioner filed his motion closer in time to 2012, long after the limitations period expired. If that is the case, his motion did not toll the statute of limitations. The tolling provision does not "revive" the limitations period (*i.e.* restart the clock); it can only serve to pause a clock that has not yet fully run. *Payton v. Brigano*, 256 F.3d 405, 408 (6th Cir. 2001). Once the limitations period has expired, collateral proceedings can no longer serve to avoid the statute of limitations. *Id.*; *McClendon v. Sherman*, 329 F.3d 490, 493 (6th Cir. 2003). Even where the post-conviction motion raises a claim of ineffective assistance of appellate counsel, the filing of the motion for relief from judgment does not revive the statute of limitations. *See Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004) (citing *McClendon*, 329 F.3d at 490). Thus, it appears that the statute of limitations was not tolled by Petitioner's motion for relief from judgment.

       The state court's rejection of Petitioner's motion for relief from judgment suggests that he filed a different motion for relief from judgment at an earlier date. On appeal, the Michigan Court of Appeals referred to his motion as a "second or successive" motion for relief from judgment. *See People v. Koan*, No. 313182 (Mich. Ct. App. Feb. 28, 2013). Thus, there is a possibility that

Petitioner filed another motion for relief from judgment which, if it was filed prior to expiration of the statute of limitations period, might have tolled the statute of limitations for a period of time, while it was pending in state court. Petitioner provides no details regarding the filing of an earlier motion, however. Thus, on the record before the Court, he is not entitled to statutory tolling of the limitations period under § 2244(d)(2).[2] Consequently, the limitations period expired in 2002, approximately twelve years before Petitioner filed the instant action.

The one-year limitations period applicable to § 2254 is also subject to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645 (2010); *Akrawi v. Booker*, 572 F.3d 252, 260 (6th Cir. 2009); *Keenan v. Bagley*, 400 F.3d 417, 420 (6th Cir. 2005). A petitioner bears the burden of showing that he is entitled to equitable tolling. *See Keenan*, 400 F.3d at 420; *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004). The Sixth Circuit repeatedly has cautioned that equitable tolling should be applied "sparingly" by this Court. *See, e.g., Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011); *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010); *Sherwood v. Prelesnik*, 579 F.3d 581, 588 (6th Cir. 2009). A petitioner seeking equitable tolling of the habeas statute of limitations has the burden of establishing two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Holland*, 560 U.S. at 649 (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *Lawrence*, 549 U.S. at 335; *Hall*, 662 F.3d at 750; *Akrawi*, 572 F.3d at 260.

Petitioner has failed to raise equitable tolling or allege any facts or circumstances that would warrant its application to the twelve-year delay at issue in this case. The fact that Petitioner

---

[2]The Court notes that the period during which Petitioner's previous federal habeas petition was pending in this Court did not toll the statute of limitations under § 2244(d)(2), because that section applies only to motions filed in state court; it does not apply to an application for federal habeas corpus review. *See Duncan*, 533 U.S. at 181-82.

is untrained in the law, was proceeding without a lawyer, or may have been unaware of the statute of limitations for a certain period does not warrant tolling. *See Allen*, 366 F.3d at 403-04; *see also Craig v. White*, 227 F. App'x 480, 482 (6th Cir. 2007); *Harvey v. Jones*, 179 F. App'x 294, 299-300 (6th Cir. 2006); *Martin v. Hurley*, 150 F. App'x 513, 516 (6th Cir. 2005); *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999) ("[I]gnorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse [late] filing."). Accordingly, Petitioner is not entitled to equitable tolling of the statute of limitations.

### III. Actual Innocence Exception

Petitioner asserts that he is innocent and that the chief witness against him lied about the facts on which the conviction is based. In *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931-32 (2013), the Supreme Court held that a habeas petitioner who can show actual innocence under the rigorous standard of *Schlup v. Delo*, 513 U.S. 298 (1995), is excused from the procedural bar of the statute of limitations under the miscarriage-of-justice exception. In order to make a showing of actual innocence, a petitioner must present new evidence showing that "'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *McQuiggin*, 133 S. Ct. at 1935 (quoting *Schlup*, 513 U.S. at 329). "[T]he standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do. Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 329; *Souter v. Jones*, 395 F.3d 577, 602 (6th Cir. 2005); *Cleveland v. Bradshaw*, No. 11-3162, slip op. at 10-11 (6th Cir. Sept. 10, 2012). "[T]o be credible a gateway claim requires new reliable evidence - whether it be exculpatory scientific evidence, trustworthy

eyewitness accounts, or critical physical evidence - that was not presented at trial." *House v. Bell*, 547 U.S. 518, 537 (2006) (internal quotation marks omitted). The Court must consider "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *Id.* at 538 (internal quotation marks omitted). "[T]he *Schlup* standard is demanding and permits review only in the 'extraordinary' case." *Id.* (quoting *Schlup*, 513 U.S. at 327) (internal quotation marks omitted).

Because actual innocence provides an exception to the statute of limitations rather than a basis for equitable tolling, a petitioner who can make a showing of actual innocence need not demonstrate reasonable diligence in bringing his claim, though a court may consider the timing of the claim in determining the credibility of the evidence of actual innocence. *McQuiggin*, 133 S. Ct. at 1936.

As evidence in support of his innocence, Petitioner offers two affidavits from the victim of his offense. In the first statement, dated October 22, 2009, the victim asserts:

> I . . . was tormented by a therapist. My therapist did not like . . . Mr. Kenneth Koan Sr. She started to have a psyc[h]iatrist put me on a [w]hole bunch of medi[cine]. So, it would have been easier to m[a]nip[ulate] me. So, she could get . . . Mr. Koan Sr. into a [w]hole lot of trouble with the law. When it all started [I] was rethinking things over. Then she would say if [I] said anything that [I] would get into alot of trouble with the court system for going back on my word plus for changing my mind on what [I] said before hand.
>
> Then [I] found myself trapped in a lie that never happened.
>
> Mr. Koan Sr, he is an in[no]cent man in this aw[]ful[] crime and lies. I need to say this now before he ends his life in th[ere] or before his time comes. I would like it very much if you would please drop all charges on . . . Kenneth Koan Sr.
>
> The reason why [I] ran from Bethany was because they filled my head with a [w]hole lot of lies. After all of this was done they moved me up on different levels. . . .

(App'x A to Pet., docket #2-1, Page ID#21.)

    In the second statement, dated February 4, 2000, the victim asserts:

    I . . . was tormented by a therapist[] at Bethany. My Therapist would keep drilling stuff into my head by saying that [Petitioner] . . . was abusing me sexually and physically. My Therapist was drilling this into my head more and more everyday because my therapist does not like [Petitioner]. The reason why I testified untruthfully is because I was afraid of my therapist and every one else that worked on the staff because they would be mean to me and if I did not say what they told me to say. I don't know what they would have done to me. That is one of the reasons to leave.

    My therapist started having me see a psyc[h]iatrist. . . . He put me on the following medic[ines:] Wellbu[trin], Burseopiere, Sarazone, Cellecotra, Saraquale, and Tophanile and I also think they had me on Valium[.] I really can't remember because of all the medicatio[n] I was on.

    I was not sexually or even physically abused.

    I was also under the influence of my therapist. My case worker when we were in court she would do sign language about what I was suppose[d] to say in court. I was really scared of her too.

    They also put me on the medic[ine] so that way it would be much easier to manip[ulate] me.

    I was also very afraid of getting into trouble by the courts for l[y]ing about [Petitioner] in court. . . .

(*Id.* at Page ID#20.)

    In reviewing Petitioner's actual innocence claim, the Court must consider these affidavits in light of the evidence presented at his trial. *House*, 547 U.S. at 538. The record of Petitioner's trial proceedings in state court was submitted to the Court in connection with his 2001 application for habeas relief. (*See Koan v. Michigan*, No. 1:01-cv-463 (W.D. Mich.), docket ##16-29.) After review of that record, I conclude that Petitioner's evidence does not satisfy the standard in *Schlup*.

- 10 -

The state court record indicates that Petitioner was charged with multiple counts of criminal sexual conduct on two boys, occurring between 1987 and 1995.  At a preliminary examination hearing on November 6, 1998, the older boy ("BV"), who was seventeen years old at the time of the hearing, testified that he had to masturbate Petitioner when he was five years old. (*Koan*, No. 1:01-cv-463, docket #18, Prelim. Exam. Hr'g Tr. 6.)  When BV was older, Petitioner made him perform a "sixty-niner," which means that Petitioner had BV's penis in his mouth and Petitioner's penis was in BV's mouth.  (*Id.* at 6-7.)  When BV was seven, eight, or nine years old, Petitioner went to where BV was sleeping and put his penis into BV's "butt." (*Id.* at 8.)  Petitioner threatened to kill BV if he told anyone about the incident, saying that he would put BV "six feet under." (*Id.* at 8.) On another occasion, Petitioner made both boys perform a "sixty-niner" with him. (*Id.* at 13.)

After the preliminary examination hearing, Petitioner was bound over for trial on eight counts of first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b(1)(a), three counts of second-degree criminal sexual conduct, Mich. Comp. Laws §§ 750.520c(1)(a); 750.520c(1)(b), and twelve counts of first-degree child abuse, Mich. Comp. Laws § 750.136b(2). The prosecutor decided to proceed to trial on one count of first-degree criminal sexual conduct, which alleged anal penetration of BV.  The trial was held before a jury on February 1 and 2, 1999.[3]

BV testified at the trial.  He was living at Bethany Christian Services at the time.  (Tr. I at 110.)  As he did at the preliminary examination hearing, BV testified that:  when he was five years old, he was forced to masturbate Petitioner (*id.* at 112-13); before BV turned fourteen,

---

[3] The transcript from the first day of trial will be referred to as "Tr. I." (*See Koan*, No. 1:01-cv-463, docket #22, Jury Trial Tr. - Volume I.)

Petitioner put his penis inside BV's "butt" and threatened to put him "six feet under" if he told anyone about it (*id.* at 116-17); and Petitioner made him perform a "69" with Petitioner (*id.* at 122). BV did not tell anyone about the incidents involving Petitioner until a year after he started living at Bethany, when he felt safe to do so. (*Id.* at 141-42.) He first told his court-appointed special advocate, Gavin Pope, then he told two therapists at Bethany, and then Detective Thomas Pennock. (*Id.* at 129, 141-44.)

The other victim ("YV"), who was fourteen years old at the time of trial, corroborated some of BV's testimony. Among other things, YV testified that he and BV had to take turns giving Petitioner a "blow job." (*Id.* at 160-63.)

Detective John Tillman of the Michigan State Police testified that he had an opportunity to interview Petitioner at the police station. Petitioner was not under arrest at the time and was free to leave. (*Id.* at 169.) Initially, Petitioner denied having sexual contact with the boys, but after some prodding, he acknowledged having anal and oral sex with them on several occasions. (*Id.* at 172.) Detective Tillman prepared a brief statement for Petitioner and read it to him. Petitioner reviewed the statement and signed it. That statement, which was introduced into evidence, states:

> I put my penis in [BV]'s and [YV]'s mouth and butt. I put it in [BV]'s and [YV]'s mouth and butt until I began to get an erection but I did not try to ejaculate in them. One time I did it with both of them, oral and rectal, then they switched.

(*Koan*, No. 1:01-cv-463, docket #27, App'x A to Plf.-Appellee's Br. in Opp'n to Application for Leave to App.)

Detective Thomas Pennock of the Hastings City Police Department testified that he interviewed Petitioner twice. (Tr. I at 181.) At the first interview, on September 29, 1998, Petitioner

denied having sexual contact with the victims. (*Id.* at 181-82.) At the second interview, which took place at the police station with Detective Tillman, Petitioner admitted having anal and oral sex with BV and YV on several occasions, starting when they were about seven years old. (*Id.* at 184.) Detective Pennock was present when Detective Tillman prepared the statement for Petitioner, and when Petitioner signed it.

Considering the foregoing evidence, the Court concludes that Petitioner's new evidence is not sufficient to meet the standard in *Schlup*, for several reasons. First, the new affidavits by BV are not credible. BV's assertion that Petitioner did not sexually abuse him is in direct conflict with his testimony under oath at two separate court proceedings, as well as the testimony of YV. If presented with evidence that BV intended to withdraw his allegations regarding the sexual abuse, reasonable jurors could discount BV's recantation as an attempt to protect Petitioner, or as motivated by fear that Petitioner could still attempt to harm him. *See McCray v. Vasbinder*, 499 F.3d 568, 574 (6th Cir. 2007) ("'[A]ffidavits by witnesses recanting their trial testimony are to be looked upon with extreme suspicion.'") (quoting *United States v. Willis*, 257 F.3d 636, 645 (6th Cir. 2001)).

Furthermore, BV's asserted justification for his allegedly untruthful testimony–fear of his therapist and the staff at Bethany–is unsupported and conflicts with his testimony at trial that he felt safe at Bethany. In addition, the notion that BV testified in open court under the direction of his therapist through the use of sign language is simply not plausible. Indeed, if BV had already made similar allegations on multiple occasions before trial, it is not clear why he would have needed coaching to repeat those allegations at the trial itself.

Second, even if BV had recanted his testimony at trial, or testified that Petitioner did not sexually or physically abuse him, that testimony would not have undermined Petitioner's written statement admitting that he had anal sex with BV, or the police officers' testimony that Petitioner admitted that conduct to them.

Third, the timing of Petitioner's claim undermines its credibility. As the Supreme Court has indicated, "[u]nexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing [under *Schlup*]." *McQuiggin*, 133 S. Ct. at 1935. In the instant case, Petitioner's claim of innocence and evidence in support come to the Court more than a decade after he discovered them. Petitioner offers no explanation for this lengthy delay.

For all the foregoing reasons, therefore, Petitioner has not established that he is entitled to overcome the procedural bar in the statute of limitations. As a result, the petition is time barred.

### IV. Merits

Even if the petition is not barred by the statute of limitations, it is without merit. In his first ground for relief, Petitioner asserts that he is innocent; however, actual innocence is not sufficient in itself to warrant relief under § 2254. "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). In *Herrera*, the Court stated in dicta that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim." *Id.* at 417. Two years after *Herrera*, the Court held in *Schlup* that an actual

innocence claim could be used to avoid a procedural bar, but in that context the actual innocence claim is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Schlup*, 513 U.S. at 315 (citing *Herrera*, 506 U.S. at 404). Thus, the Supreme Court has distinguished between a procedural innocence claim, which can permit a petitioner to overcome procedural obstacles that would otherwise preclude review of underlying constitutional claims, and a substantive or "free-standing" claim of innocence discussed in *Herrera*.

This Court may grant habeas corpus relief only when the state court has violated or unreasonably applied a clearly established holding of the Supreme Court. *See* 28 U.S.C. § 2254(d). In the absence of clearly established Supreme Court precedent establishing a free-standing claim of actual innocence, Petitioner cannot rely on that claim to obtain relief. *See Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007). Furthermore, this is not a capital case, the type of case for which the Supreme Court has suggested that a freestanding claim of actual innocence claim might warrant relief. *See Herrera*, 506 U.S. at 417. Petitioner, therefore, cannot obtain habeas corpus relief on his claim of actual innocence. Instead, he must identify a separate constitutional violation.

Petitioner implies that the victim's recantation indicates that he was denied a fair trial, because the prosecution presented perjured testimony. A defendant's due process rights are violated when the prosecutor *knowingly* suborns perjury to obtain a conviction, and "there is a reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989). To prove that the prosecutor engaged in such conduct, the defendant must demonstrate that the testimony referred to was actually false, it was material, and the prosecutor knew that it was false. *Id.* In contrast, Petitioner does not claim that

the prosecutor knowingly submitted perjured testimony.[4]  Indeed, according to the victim's affidavits, his therapists were responsible for manipulating him into thinking that he had been sexually abused; he does not claim that the government pressured him to give false testimony, or that they were aware that any of his testimony was false.  Thus, Petitioner has not demonstrated that his constitutional rights were violated by the presentation of this testimony at trial.

In ground two of the petition, Petitioner claims that the affidavits by the victim demonstrate that his counsel's assistance at trial and on appeal was ineffective.  In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance."

---

[4]Instead, Petitioner claims that he is entitled to a new trial under Michigan law, even if the prosecutor did not knowingly use perjured testimony, citing *Peeple v. Lester*, 591 N.W.2d 267 (Mich. Ct. App. 1998).  (*See* Mem. in Support of Pet., docket #2, Page ID#12.)  To obtain relief under § 2254, however, Petitioner must demonstrate that his constitutional rights have been violated.  It is not enough for him to establish that he is entitled to a new trial under state law.

*Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Petitioner does not explain how the post-trial discovery that the victim intended to recant his trial testimony could have rendered his counsel's performance unreasonable. He does not identify anything that they should have done differently to assist him. Furthermore, considering all the evidence pointing to Petitioner's guilt, it appears that a lack of effective assistance with regard to the victim's affidavits could not have meaningfully prejudiced him. Even if the victim had recanted his testimony during the trial, he would have been subject to impeachment based on his earlier testimony at the preliminary examination hearing. In addition, Petitioner's written admission that he sexually abused the victim would have provided strong support for a conviction notwithstanding the victim's conflicting statements regarding that abuse. Thus, the second ground for relief is also without merit.

Petitioner also argues in his brief in support of the petition that he was denied due process when the state court refused to review or grant his motion for relief from judgment because, according to the court, he had exhausted his appeal rights. Petitioner assumes that he has a constitutional right to attack his conviction in collateral proceedings, but the Constitution does not guarantee such a right. *See, e.g.*, *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987) ("States have no obligation to provide this [post-conviction] avenue of relief."); *accord United States v. MacCollom*, 426 U.S. 317, 323 (1976) (plurality opinion). In the absence of such a right, Petitioner cannot claim that the state deprived him of due process. Thus, Petitioner's due process claim regarding his post-conviction proceedings is meritless.

**Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied because it is barred by the one-year statute of limitations and/or because it is without merit. I further recommend that a certificate of appealability be denied. *See Slack v. McDaniel*, 529 U.S. 473 (2000).


Date:  July 14, 2014                                              /s/ Ellen S. Carmody
                                                                  ELLEN S. CARMODY
                                                                  United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).